Smith, C. J.
The second question is easily disposed of.
By the English statute of 43 Elizabeth, the word “ grandchildren ” is omitted, and it seems ,.not judicially determined whether the word “ children ” extends to them. 3 Bum, 563. In respect to “ father,” “ mother,” &c., the language of the English statute and our own is alike, and no doubt tbe same construction should be put on ours which, at the time of enacting our statute, had been put on the English. At first it was holden that, after the death of the wife, who was liable for maintenance of her poor relation, the husband was not liable ; but, during the marriage, he was. It was considered as a debt of hers when single, wbiob extends to charge the husband ; but, at the death of the wife, tbe relation being dissolved, the husband is under no further obligation. 3 Burn, 562, 563 ; 1 Blackst. 448. It seems, in some cases, to have been determined, that, where the husband received an estate with bis wife in marriage, he was chargeable in respect of such estate. 3 Burn, 562. But in The King v. Munden, 5 Geo. I., reported 1 Strange, 290; 3 Burn, 563, it was determined that the husband was not obliged to maintain his wife’s mother, though be bad a good fortune with bis wife. By the law of nature tbe child is bound to maintain bis own parents; tbe statute was made to enforce this obligation, and extends no farther than the law of nature went before. The King v. Benoier, 2 Ld. Raym. 1454, was in 13 Geo. I., eight years afterwards, and was decided tbe same way.[1] The circumstance of Munden’s having had a fortune with bis wife does not seem to have been considered as affecting his liability. (a) The King v. Munden was recognized to be law in Tubbs and others v. Harrison and another, 4 T. R. 118. It *352 appears that the wife was alive at the time the order was made on the husband, which was quashed. The Court, in the latter case, were of opinion that the statute only extends to natural relations. 1 Blackst. 449, n. (2).
It is concéived that this construction has been always put on the statute of the late province, and on the present statute.
If it had been intended to charge the husband in any event, provision for the purpose would have been made in the revision in 1791. 6 G-. Bacon, 379.
The first question is a more difficult one. The general doctrine is, that infants are not liable on any contract except for necessaries and that, with several exceptions, they are liable for all torts committed by them. The support of a grandmother can hardly be considered as a necessary for the grandchild, (a) In England, and in the late province, the liability of relations to afford relief was enforced, not in a suit at law or equity, but by an order of the sessions. We have no reports of this court; and their decisions would have little authority, if we had. We must decide this question upon principle.
Blackstone considers the obligation of a relation of sufficient ability, of a mother, for example, to maintain her child, as a debt, which, like her other debts dum sola, devolves on the husband, so far at least as to make him liable during the coverture. But infancy is a bar to all actions of debt or assumpsit, except for necessaries. Wherever an infant can plead non-assumpsit, he can plead infancy ; or, rather, he may avail himself of the infancy as a complete defence, except in the case of necessaries; certainly where the cause of action does not arise ex delicto, as in the case of money had and received for embezzlement. 1 Esp. Rep. 172; s. c. Peake’s Cases, 223.
Is the present case an exception to the general rule ?
The present action is assumpsit on the implied promise, *353 which the law raises, that every man promises to perform all the duties enjoined on him by statute.[1] Still, it would seem that case would also lie; the non-performance of the duty being considered as a wrong done to the person entitled to demand it. But this will not help, the matter; for the rule is, that, wherever assumpsit will lie and infancy would be a bar, the defendant shall not be deprived of the bar by the election of the plaintiff to sue in tort instead of assumpsit. 8 T. R. 335.
Let us see the ground on which infants are excused from performing their contracts. It is because they are supposed to want sufficient understanding to make contracts. They are not holden by their contracts, because they are likely to make improvident contracts, — to be imposed upon. But this reasoning does not apply to the present ease. The law has made this contract for them, in respect of their obligation by the law of nature, and their ability on the score of property. Both these circumstances apply equally to infants as to adults. They are no more liable to imposition in performing this duty than adults are. They have nothing to do but to pay. They have nothing to do but to obey the law. There is no exception in their favor in the statute. It is holden that a statute may affect their rights, and they are bound; e.g. Statute of Limitations. An infant is no more exempted from an obligation imposed by statute than others. A statute is a law, and infants are bound to obey the law. It is true, in favor of infants, it is held, that general statutes that inflict corporal punishment do not extend to infants; the punishment also being collateral to the offence. See 3 G. Bacon, 592; 1 Hawk. c. 64, § 35, semble. But where the words are general, and the punishment prescribed by the statute, infants arc included as well as others. Id. It seems to be on this principle — that the infant cannot be injured by his own conduct — that it is holden that judicial acts done by him in a court of record regularly bind him. 3 G. Bacon, 596. It is stated by Lord Mansjoteld, in Zouch v. Parsons, 3 Burr. 1801, a right and lawful act done by *354 an infant is not within the reason of the privilege of infants, (a) It is a lawful act for an infant of ability to support parent in want; both by law of nature and statute. When done, it binds him. If she paid, could not recall. Why? Because payment was a lawful act. Ergo, bound to pay. She could not avoid the payment. Why ? Because bound to make it. 3 Burr. 1800; 6 G. Bacon, 589.
Semble, a lunatic or idiot would be bound in this case. Why not an infant? Neither can make an express promise. Both are bound to obey all laws as far as property is concerned; the infant much farther.
An infant liable for rent on his occupation and enjoyment; so for a fine, the infant being a copyholder. 3 Burr. 1717.
In England, relations liable to maintain each other are taxed, assessed, for the purpose, by the sessions. It is levied as other rates, &e. It never was doubted here that infants — that is, their .eátates — are liable to taxes. This is [in effect] a tax on a particular description of persons, for the support of the poor. This was formerly the case [literally] here.[1] The principle is the same when an action is given. Was it ever supposed that a person charged to be the reputed father of a bastard child could plead infancy ? The maintenance in that case, as in this, is-imposed by statute, without any exception in favor of infants, and yet that is for personal misconduct. It may be laid down as a rule, that, wherever a statute imposes a burden on persons (and especially, as here, on property), infants and their property are liable. Default.[2]

 Indeed, it does not affect the liability of the husband on account of the wife, at law, in any case. If the wife bedndebted before marriage, the husband is bound, afterwards, to pay the debt, for he has adopted her and her circumstances together. 3 Mod. 186; 1 Blackst. 443. But, though he has had a great fortune with his wife, if she dies before him, he is not liable to pay her debts contracted before marriage, either in law or equity. 1 P. Wms. 468; 1 Blackst. 443 (n. 18).

 The point decided was that a father-in-law is not obliged to maintain his daughter-in-law.

 Sed vide 1 Strange, 168. Infant' liable for necessaries for his wife. They are considered as necessaries for him. 3 G. Bacon, 596. He is also liable to an action for the nursing of his lawful child. 3 G. Bacon, 596; 1 Fonbl. 67, n. “y,” S. P.

 Hillsborough County v. Londonderry, 1862, 43 N. H. 451.

 The privilege is to protect infants from wrong. Can it be wrong in an infant to do what a statute has declared a duty, and has made no exception of infants, and which, when done, he cannot avoid? See I Fonbl. 71 a.

 Provincial Statute of 1719.

 I. Non-liability of Husband.
Husband held not liable for support of wife’s ancestors, in Mack v. Parsons, 1786, Kirby, 155; Nichols v. Sherman, 1792, 1 Boot, 361; Commissioners of Poor v. Gansett, 1831, 2 Bailey, 320. In none of these eases did it appear that he received any property by his wife. See also Newtown v. Danbury, 1821, 3 Conn. 553; Johnson v. Ballard, 1857, 11 Rich. (S. C.) L. 178; Anonymous, 3 N. Y. Leg. Obs. cited in 4 Abb. *355 N. Y. Dig. 623, § 47; Lawrence, J., in Cooper v. Martin, 1803, 4 East, 76, 84.
Chancellor Kent, while conceding that the husband is not liable, evidently regrets that the statute was not so framed as to reach him when he has received property through the wife. 2 Kent, Com. 192.
II. Non-liability of Wife.
The agreed case submitted the question, whether Eisk and wife, “or either of them,” were liable. The nonliability of the wife seems tacitly assumed by the Court (as also in Commissioners of Poor v. Gansett, ubi sup.) ; perhaps on the ground that, by marriage, she had parted with her ability to maintain. See 2 Kent, Com. 192; Lawrence, J., in Cooper v. Martin, ubi sup. In view of recent legislation, a marriage at the present time might not have this effect.
In 2 Kent, Com. 192, it is said that, if the wife has separate property, “ the court of chancery would, undoubtedly, in a proper case, make an order, charging that property with the necessary support of her children and parents.”
III. Liability of Infant.
As to the fiction by which assumpsit is maintained against persons legally incapable of contracting, see the very able opinion of Ladd, J., in Sceva v. True, 1873, 53 N. H. 627, 630-633.
In Succession of Lyons, 1870, 22 La. Ann. 627, “alimony ” was allowed a destitute grandmother from the estate of infant grandchildren.
As to whether chancery will make an allowance from an infant’s estate for the support of his parents, see Zabkiskie, Chancellor, in McKnight’s Ex’rs v. Walsh, 1872, 23 N. J. Eq. 136, 143-145; s. c. 24 N. J. Eq. 498, 505.
“ It must be regarded as settled, that there is, at common law, no legal obligation to support a parent.” Bell, C. J., in Lebanon v. Griffin, 1864, 45 N. H. 558, 561. Conversely, it was held in Kelley v. Davis, 1870, 49 N. H. 187, that a parent is under no legal obligation, independent of statutory law, to maintain his minor child.